UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert C. AUERBACH and Michael A. Helish, Defendants–Appellants.

Nos. 88–3466, 89–1191.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1990.
Decided Sept. 17, 1990.

Jack Thar, Asst. U.S. Atty., Indianapolis, Ind., for U.S.

J. Richard Kiefer, Safrin, Kiefer & McGoff, Indianapolis, Ind., for Robert C. Auerbach.

John D. Middleton, Melrose, Fla., Vincent S. Taylor, Bloomington, Ind., for Michael A. Helish.

Before CUDAHY, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Defendants Robert Auerbach and Michael Helish were convicted of conspiracy and other acts related to their involvement in a drug distribution ring operating out of central Indiana between 1976 and 1985. Auerbach contests his convictions under 18 U.S.C. § 1952 (the "Travel Act"). Helish challenges his convictions for conspiracy and possession of marijuana with intent to distribute. We reject the defendants' claims and affirm their convictions.

## I.

In 1975, brothers Paul and Richard Heilbrunn began to import marijuana and to distribute it from various sites in central Indiana. In 1976, they recruited Charles Stocksdale, whom they had known since the late 1960s, to join their organization. The Heilbrunns and Stocksdale established "Heilbrunn and Friends," a natural food distribution warehouse, in Indianapolis in 1978, funneling money from drug sales into the business through a network of offshore corporations. Richard Bernstein started working for Heilbrunn and Friends as a driver and warehouseman in 1982, but soon began to work exclusively in the owners' marijuana business. By 1985 he was running that business because the Heilbrunns and Stocksdale were under investigation.

Among the customers of Heilbrunn and Friends was Robert Auerbach, who operated the "Rainbow Blossom," a health food store, in Louisville, Kentucky. Stocksdale approached Auerbach at an Indianapolis 500 party thrown by the Heilbrunns in 1985 about purchasing marijuana from the organization. At the same time, Stocksdale introduced Auerbach to Richard Bernstein, telling him that Bernstein would be responsible for all transactions with Auerbach. Auerbach subsequently became a regular marijuana buyer from the Heilbrunn organization, purchasing a total of approximately 10,000 pounds of marijuana. Bernstein dispatched drivers to deliver the marijuana to Auerbach in Louisville; Auerbach returned about $3,000,000 to Bernstein in payment.

Michael Helish attended the same Indianapolis 500 party, and there met Charles Stocksdale. Stocksdale and Bernstein later asked Richard Aaron, who had previously worked on drug deals with Bernstein, to approach Helish about purchasing some marijuana. In Bernstein's words, he and Stocksdale were hoping that Helish "could move a lot for us." Helish had been a friend of Bernstein's deceased brother, but Aaron had known Helish since 1970 and Bernstein and Stocksdale felt that, for this reason, Aaron should approach Helish. Aaron did so, and reported that Helish was interested in purchasing marijuana. Bernstein sent a total of approximately 5,500 pounds of marijuana, in three shipments, to Helish via Aaron's home in Carmel, Indiana. Helish inspected the first shipment there, and arranged to have it and the subsequent shipments transported to Florida, where he lived. Helish provided approximately $100,000 in front money to Aaron, and thereafter made weekly payments of several hundred thousand dollars. Aaron received a total of approximately $1.5 million from Helish. In October, Helish returned 1,200 pounds of marijuana to Aaron that he had been unable to sell.

Auerbach and Helish were both indicted and charged with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 841(a). Auerbach was also charged in three counts with violating 18 U.S.C. § 1952 by causing persons to travel in interstate commerce in furtherance of the conspiracy. Helish was charged with three counts of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury convicted both defendants on all counts. The judge sentenced Auerbach to six years on the conspiracy

count and two years on each Travel Act count, the latter sentences to be served concurrently. The court sentenced Helish to fourteen years on each count, to be served concurrently. Both defendants were also fined.

Auerbach concedes that the government's evidence was sufficient to support his conviction for conspiracy but appeals his convictions under the Travel Act. He contends that he did nothing to "cause" the travel of those delivering the marijuana from Indiana to Kentucky or those returning the money from Kentucky to Indiana. Helish appeals each of his convictions. He argues that there was insufficient evidence to convict him of either conspiracy or possession with intent to distribute. He also contends that the variations between the government's indictment and its proof at trial, and improper prosecutorial comments during the trial, unduly prejudiced him and denied him a fair trial. Helish's final claim is that the trial court erred by denying a tendered multiple conspiracy jury instruction.

## II. Auerbach

Auerbach claims that he did not cause anyone to travel between Indiana and Kentucky since he did not direct and control the couriers who shuttled between Bernstein and him delivering marijuana and picking up money.[1] Bernstein, he contends, "caused" this travel. This argument is specious. Auerbach cannot dodge personal responsibility for the interstate character of his involvement with the operations of the Heilbrunn drug ring when he was an out of state operative. Auerbach regularly provided directions (via telephones and beepers) to the couriers dispatched by Bernstein; moreover, by the same exercise in semantics Auerbach employs one also may argue that his residence in Kentucky caused Bernstein to dispatch the couriers across state lines.

■■■■ In any event, criminal liability under the Travel Act does not hinge upon which side can reach farther back into a sequence of "but fors." To establish a violation,

> it is sufficient to show interstate travel or the use of an interstate facility with intent to promote or carry on an unlawful activity, and facts constituting the promotion or carrying on of the unlawful activity. Of course, where as here, a conspiracy is shown, conspirators are responsible for the acts of their coconspirators in furtherance of the unlawful activity.

*United States v. Craig,* 573 F.2d 455, 489 (7th Cir.1977) (citations omitted), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). Personal knowledge of the interstate activities, or the use of interstate facilities, is not an element of a Travel Act violation; it is sufficient that the defendant's *unlawful activity* caused the interstate travel. *See, e.g., United States v. Raineri,* 670 F.2d 702, 716–17 & n. 12 (7th Cir.1982) (evidence that checks issued by defendant's nude dancing establishment crossed state lines during collection process sufficient to support Travel Act conviction). Here, Auerbach's illegal activity was participation in a drug distribution conspiracy; it is immaterial whether Auerbach personally caused, or knew of, the interstate travel because, as a co-conspirator, he is liable for Bernstein's acts in furtherance of the conspiracy.[2]

---

1. Section 1952 refers only to those who actually travel in interstate commerce or use instrumentalities of interstate commerce. The liability of those who "cause" such actions is founded upon 18 *U.S.C.* § 2(b). The government's failure to cite this statute specifically does not impair the validity of the indictment, however, since the indictment clearly states the nature of the defendant's liability. *United States v. Raineri,* 670 F.2d 702, 715 n. 9 (7th Cir.1982); *United States v. Peskin,* 527 F.2d 71, 76 (7th Cir.1975); *see also* Fed.R.Crim.P. 7(c)(3).

2. Auerbach's counsel protests that this reading of the Travel Act is too expansive. At oral argument he complained that "what the government would have the court believe in its brief is that because Auerbach was a member of the conspiracy that he is somehow responsible for every act of everybody else in the conspiracy." That, of course, is exactly the nature of conspiracy liability. As the Supreme Court explained in *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946):

> The criminal intent to do the act is established by the formation of the conspiracy. Each

Auerbach's reliance on *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971) is therefore misplaced. In *Rewis*, the Court reversed the Travel Act conviction of the owner of a gambling establishment, holding that he did not, for purposes of the Act, cause his out of state patrons to travel across the state line to reach his establishment. *Rewis* did not, however, address a preexisting business relationship (not to mention a criminal conspiracy) between two principals who shuttled couriers back and forth between themselves. *See United States v. West*, 877 F.2d 281, 289 n. 3 (4th Cir.1989) (*Rewis* distinguishable on this basis). Moreover, the Court noted that "there are cases in which federal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity...." *Id.* 401 U.S. at 813, 91 S.Ct. at 1060. In fact, the Court suggested that Congress intended the Travel Act to reach exactly such cases, noting that it targeted the Act not toward "sporadic, casual involvement [in the predicate offenses], but rather toward a continuous course of conduct sufficient for it to be termed a business enterprise." *Id.* at 811 n. 6, 91 S.Ct. at 1059 n. 6 (quoting Robert F. Kennedy, Attorney General when the Act was proposed). Auerbach purchased marijuana from Bernstein and the Heilbrunns regularly from May 1985 to June 1986 in furtherance of their conspiracy; his involvement in their interstate shipments was anything but sporadic or casual.

### III. Helish

#### A. *Variation and Amendment of the Indictment*

The indictment alleged that Helish possessed different quantities of marijuana, with intent to distribute it, in May, July, and August 1985. These were the dates on which the government believed Helish had taken delivery of the marijuana shipments

from Aaron. The testimony elicited at trial, however, indicated that Helish received all three shipments in April and May. Helish argues that this variance between the indictment and the government's proof substantially prejudiced him because at trial he relied upon an alibi defense for the months of July and August 1985. In addition, he contends that the inconsistent testimony adduced at trial forced the government to constructively amend the indictment by arguing that Helish was in continuous possession of marijuana from May through August rather than employing the theory of the indictment that Helish took possession of the marijuana on three different occasions. Helish maintains that this continuing possession theory exposed him to double jeopardy because it charged him in three counts for possessing the same marijuana.

▆▆ Helish overlooks a critical fact. The government charged him with possessing marijuana with an intent to distribute it, not with receiving marijuana. The indictment alleged that Helish possessed three different shipments of marijuana: Count 5 alleges that he possessed 1700 pounds of marijuana in May; Count 6 alleges that he possessed 1800 pounds in July; and Count 7 alleges that he possessed 2000 pounds in August. The dates on which Helish took delivery of the marijuana, however, are not material to a charge of possession with intent to distribute (unless, of course, he took delivery after the dates of the alleged possession). In general, a variance between an indictment and the proof established at trial is not fatal unless it involves an essential element of the crime charged. *United States v. Cina*, 699 F.2d 853, 859 (7th Cir.1983). "An 'essential' or 'material' element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Id.* The date Helish received the marijuana

conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures,

or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.

has no impact upon the lawfulness of his possession of the marijuana, and must be considered immaterial. "Unless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." *United States v. Leibowitz,* 857 F.2d 373, 378 (7th Cir.1988). Helish's alibi defense does not make the dates he received the marijuana material:

> [w]here the indictment [as here] alleges that an offense allegedly occurred "on or about" a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. He therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date.

*Id.* at 379. Helish's claim that he was prejudiced is further undercut by the limited utility of an alibi defense against a charge of possession with intent to distribute. The availability of constructive possession arguments to the government makes the physical presence of the defendant with the drugs at any given time of little moment to a defendant's guilt or innocence.[3]

Apparently overestimating the strength of the defendant's variance argument, the government is unwilling to concede that there was a variance between the indictment and the evidence adduced at trial. Instead, the government argues that it offered the evidence concerning the dates of the deliveries only to prove that Helish subsequently possessed the stated quantities of marijuana in May, July, and August. The government's reluctance to acknowledge a variance, coupled with Helish's alibi defense for the months of July and August, forced it to explain to the jury why it charged Helish with possession in July and August, rather than in May alone:

> [S]o why July and August? July and August because as the court will instruct you with regard to possession, the term possession means that you have or you have [sic] the ability to control. Mr. Helish did not pick this marijuana up. He always had drivers [on] duty. Mr. Helish was directing it and Mr. Helish was the one that was making sure that the proceeds would get back to Mr. Aaron, whether he did it himself or whether he had the drivers bring it back. But he had in May, marijuana that he possessed with the intent to distribute and he had it in July and he had it in August.

*Trial Transcript,* vol. IX, at 1210.

The government contends that these remarks constituted only a comment upon Helish's constructive possession of the marijuana in July and August. We find this assertion to be disingenuous; it does not explain why Helish was charged with possessing portions of the marijuana in July and August when the government's evidence established that he possessed all of it in May. The government charged Helish with possession in July and August simply because that is when it thought he received the second and third shipments of marijuana, not because it was relying on a constructive possession theory to convict him.[4]

Helish claims that the government's remarks constructively amended the indictment by presenting the jury with a theory that was not presented to the grand jury at the time of the indictment. He asserts that the evidence adduced at trial forced the government to argue that he was in continuous possession of all the marijuana in May, July, and August, rather than in possession of the separate installments as the indictment charged. The variance, Helish contends, reduced the government to asserting that Helish was guilty of all three counts of possession merely because he

---

**3.** Proof of constructive possession of a controlled substance requires evidence of ownership, dominion, or control over the illegal drugs, not physical possession. *See United States v. Garrett,* 903 F.2d 1105, 1112 (7th Cir. 1990); *United States v. Manzella,* 791 F.2d 1263, 1266–67 (7th Cir.1986).

**4.** We have previously criticized the Indianapolis U.S. Attorney's office for making a similar argument when faced with a variance between its indictment and its evidence. *United States v. Williams,* 798 F.2d 1024, 1035 (7th Cir.1986).

was in continuous possession of the same marijuana in May, July, and August. In addition to constituting an impermissible constructive amendment of the indictment, Helish asserts that the government thus subjected him to double (triple?) jeopardy, charging him for the same offense three times.

We do not agree with Helish's assertion that, solely on the basis of the above remarks, "it is reasonable to assume that the jury found the Defendant guilty of possessing the same marijuana in May, July and August." Brief for the Appellant at 34. Viewed in isolation, the government's remarks are ambiguous. The indictment, however, is not. It clearly charges that Helish received three separate deliveries of marijuana; each count relates to a specific shipment and can be distinguished by quantity as well as by the alleged date of possession. Immediately before making the above remarks, the prosecutor emphasized to the jury that each count related to a separate delivery of marijuana. Moreover, the jury received only an instruction concerning constructive possession; the trial court issued no "continuing possession" instruction that threatened the defendant with double jeopardy.[5] "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Muelbl*, 739 F.2d 1175, 1180 (7th Cir.1984) (emphasis in

original) (quoting *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984)). Helish's protests notwithstanding, nothing the government did or said mislead the jury about the terms of the indictment; accordingly, Helish's constructive amendment and double jeopardy claims fail.

B. *Sufficiency of the Evidence*

■ Helish also claims that the evidence presented by the government was insufficient to support the convictions for possession in July and August and for conspiracy. When reviewing appeals on this ground we examine the evidence presented at trial in the light most favorable to the government, giving it the benefit of all reasonable inferences, and will reverse only if we find that a reasonable jury could not have concluded beyond a reasonable doubt that the defendant committed the alleged offense. *United States v. Bennett*, 908 F.2d 189, 196 (7th Cir.1990).

■ The government's reluctance to concede that there was a variance between its indictment and its evidence invited this argument. The government contends that, notwithstanding the actual delivery dates, its evidence is sufficient to show that Helish had constructive possession of the second and third deliveries of marijuana (*i.e.* 3800 pounds of marijuana) *in July and August*. But it presented no evidence of Helish's inventory of marijuana during

---

**5.** We note with some concern, however, that the trial court apparently subscribed to the belief that Helish could have been charged in three counts for possessing the same marijuana. In overruling the defendant's motion for a directed verdict regarding the July and August possession counts, the judge stated that:

The fact he got them on a certain date doesn't restrict the ability of the government to charge that he possessed them in this case, continued to possess them one month at a time, rather than a day at a time. I think he might be lucky he didn't get charged one day at a time throughout the course of this thing. If the government had decided to charge him with possession with intent May 1st and 2d, et cetera, all the way through the end of the October, the proof would have been different, but the concept is the same, and he had possession.

*Trial Transcript*, vol. V, at 658.

To the extent that the trial court's remarks can be construed to validate multiple charges for possessing the same marijuana on different days, they are incorrect. Continuing possession of the same marijuana would not satisfy the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining when unlawful activity may be subject to multiple charges. Under *Blockburger*, two offenses may be considered distinct if they require proof of different facts, but "when the impulse is single, but one indictment lies, no matter how long the action may continue." *Id.* at 302, 52 S.Ct. at 181. Multiple convictions for possessing the same drugs under the same statute clearly fails this test. *See, e.g., United States v. Fiallo–Jacome*, 784 F.2d 1064 (11th Cir.1986) (multiple counts of possession of cocaine held to constitute double jeopardy when evidence indicated that possession was continuous).

those months; the fact that he returned 1200 pounds in October is not sufficient evidence to prove that he had possession of an 1800 pound shipment in July or a 2000 pound shipment (as opposed to a 1200 pound shipment) in August. *Compare United States v. Williams*, 798 F.2d 1024, 1035 (7th Cir.1986) (evidence that defendant had possession of three pounds of methamphetamine in mid–April held to be "the least possible amount of evidence" sufficient to sustain conviction for possession of three pounds of methamphetamine *in or about* March).

Nevertheless, we do not agree that there was insufficient evidence to support Helish's convictions for possession with intent to distribute in counts 6 and 7. Helish contends that there was absolutely no evidence presented to support his conviction for possession of the 1800 pound shipment of marijuana *in July* or the 2000 pound shipment *in August*. This argument merely repeats his variance argument: because the government's proof indicated that the deliveries were made in April and May, there was no evidence that he possessed the marijuana cited in counts 6 and 7 in July and August. As we have stated, however, that variance is not fatal to the government's charge; if the government presented sufficient evidence to convict Helish of possession of the stated quantities of marijuana, the convictions are valid despite the variance in the dates of possession.

The government presented more than enough evidence to satisfy its burden of proving that Helish took control of the quantities of marijuana alleged in the indictment. When approached by Richard Aaron, Helish agreed to purchase marijuana from the Heilbrunn organization. Aaron received three deliveries of marijuana at his home. Helish went to Indiana to inspect the first shipment and had it transported to Florida. Shortly thereafter he gave Aaron approximately $100,000 in a PVC pipe as front money for the drugs. Helish did not inspect the second and third shipments, but arranged to have them picked up from Aaron's home each time. Helish made regular payments of between $50,000 and $100,000 to Aaron until October of 1985, when he returned approximately 1,200 pounds of marijuana to Aaron in Indiana. This evidence amply supports the jury's conclusion that Helish took possession of 5500 pounds of marijuana with an intent to distribute it.

■ Helish's conviction for conspiring with the Heilbrunn organization presents a closer question. "[W]hen the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, we must find substantial evidence in the record of the defendant's participation in the conspiracy."[6] *United States v. Durrive*, 902 F.2d 1221, 1229 (7th Cir. 1990). Helish contends that there is no evidence of his participation; at most, he claims, the government's evidence establishes only that Helish purchased marijuana from the Heilbrunn organization. The government argues that Helish's ongoing business relationship with Aaron, his acquaintance with Stocksdale and Bernstein, and his role as a distributor distinguish him from a mere buyer and are sufficient to infer that Helish had agreed to join the Heilbrunn conspiracy.

■ We agree. To prove that a defendant was a member of a conspiracy the government must present sufficient evidence to demonstrate that the defendant knew of the conspiracy and that he intended to join and associate himself with its

---

**6.** We recently adopted this standard in conspiracy cases in order to alleviate concerns that our previous use of a "slight" evidence rule could be "construed to vitiate the government's omnipresent burden of proving guilt beyond a reasonable doubt." *United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir.1990). Our adoption of a distinct standard for reviewing sufficiency of the evidence claims in conspiracy cases does not imply, however, that the standard of review differs substantively from that employed when reviewing sufficiency claims in other types of cases. Rather, it merely reflects our concern that the prosecution's burden in conspiracy cases not be relaxed. In all cases, the prosecution must prove the defendant's guilt beyond a reasonable doubt; "substantial" evidence is merely evidence of sufficient quantity and quality to support the jury's verdict.

criminal design and purpose. *United States v. Anderson*, 896 F.2d 1076, 1078–79 (7th Cir.1990); *United States v. Adamo*, 882 F.2d 1218, 1223 (7th Cir.1989); *United States v. Vega*, 860 F.2d 779, 792 (7th Cir. 1988). "Our cases make clear that merely purchasing drugs or other property from a conspiracy, standing alone, can never establish membership in the conspiracy." *United States v. Douglas*, 818 F.2d 1317, 1321 (7th Cir.1987) (citing cases). Nevertheless, "one who buys from a conspirator for resale is a member of the conspiracy if he knows at least its general aims...." *United States v. Marks*, 816 F.2d 1207, 1212 (7th Cir.1987); *see also United States v. Roth*, 777 F.2d 1200, 1205 (7th Cir.1985) ("while the ultimate consumer is not himself a conspirator ... the middleman is"); *United States v. Andrus*, 775 F.2d 825, 853–54 (7th Cir.1985) (evidence that cocaine purchaser resold cocaine purchased from conspirator sufficient to support conclusion that purchaser joined the distribution conspiracy).

Moreover, Helish's dealings with Aaron suggest a close working relationship that belies his claim that he was unaware of the conspiracy. *See United States v. Liefer*, 778 F.2d 1236, 1247 n. 9 (7th Cir.1985) (evidence that conspirator delivered marijuana to defendant to store on his farm held sufficient to connect defendant to the conspiracy). The evidence established that Helish dealt continuously with Aaron throughout the spring and summer of 1985. His purchases were not discrete transactions requiring limited contact with the conspiracy; rather, they required an ongoing relationship that soured only when Helish failed to move the marijuana fast enough to satisfy Bernstein. At that point, Bernstein pressured Aaron to force Helish to increase his sales; Aaron testified that he told Helish that his superiors wanted sales to increase or Helish to return the unsold marijuana. Finally, the quantity of marijuana alone was sufficient to put Helish on notice that Aaron was working for a large drug distribution operation. "[I]f each [defendant retailer] knew, *or had reason to know,* that other retailers were involved ... in a broad project for the smuggling, distribution and retail sale of narcotics, and had reason to believe that their own benefits derived from the operation were probably dependent upon the success of the entire venture, the jury *could find* that each had, in effect, agreed to participate in the over-all scheme." *United States v. Grier*, 866 F.2d 908, 924 (7th Cir.1989); *United States v. Cerro*, 775 F.2d 908, 911 (7th Cir.1985) (quoting *United States v. Baxter*, 492 F.2d 150, 158 (9th Cir.1973)). It was also sufficient to show Helish's intent to assist that distribution. *Cf. Roth*, 777 F.2d at 1205 (acknowledging government's belief that distribution conspiracy existed on basis of large quantity of drugs purchased by suspect). *Compare United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir.1990) (small quantity of drugs, standing alone, insufficient to support conviction for possession with intent to distribute).

This evidence is sufficient to establish that Helish knew that Aaron was a member of a large scale drug distribution ring and that he agreed to participate in its activities. Helish complains that there is no evidence that he knew, or had any dealings with, other members of the conspiracy. The evidence actually indicated, however, that Helish had known Bernstein for some time and had met Stocksdale on at least one occasion. More importantly, however, acquaintance with each member of a conspiracy is not a prerequisite to membership in the conspiracy. "While the parties to the agreement must know that others are participating in the conspiracy, they neither have to personally know the individuals involved nor do they have to participate in every facet of the conspiracy scheme." *Adamo*, 882 F.2d at 1224 (quoting *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir.), *cert. denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985)); *United States v. Percival*, 756 F.2d 600, 607 (7th Cir.1985); *United States v. Varelli*, 407 F.2d 735, 742 (7th Cir.1969). Indeed, mere acquaintance with conspirators is an insufficient basis for inferring membership in the conspiracy. *Percival*, 756 F.2d at 610.

C. *Multiple Conspiracy Instruction*

██ Helish also claims that he was denied a fair trial when the trial court re-

fused his tendered jury instruction concerning the existence of multiple conspiracies. He argues that had the court instructed the jury concerning multiple conspiracies, it might have concluded that his dealings with Richard Aaron constituted a distribution operation distinct from that of the Heilbrunns.

"[A] defendant is entitled to an instruction on his or her theory of defense if: the defendant proposes a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial." *Douglas*, 818 F.2d at 1321–22. Although Helish's proposed instruction correctly states the law, satisfying the first prong of the *Douglas* test, it fails the other three. Considering that Aaron approached Helish at the request of Stocksdale and Bernstein, two of the central figures in the Heilbrunn operation, we find the defendant's claim that the agreement between Aaron and Helish constituted a separate conspiracy to be without evidentiary support. "Separate conspiracies exist when each of the conspirators' agreements has its own end, and each constitutes an end in itself." *United States v. Sababu*, 891 F.2d 1308, 1322 (7th Cir.1989); *United States v. Kendall*, 665 F.2d 126, 136 (7th Cir.1981). Here, there was no divergence between Helish's aims and those of the conspiracy; both sought to get the same marijuana into the hands of users on the street. Aaron, who described himself as a "go-between," was clearly acting to further the interests of the Heilbrunn organization. Moreover, as we noted above, the evidence was more than adequate to support Helish's conviction for participating in the Heilbrunn conspiracy. The trial judge thus properly exercised his discretion in refusing Helish's proposed instruction because the evidence at trial did not support the existence of more than a single conspiracy.

We also conclude that the conspiracy instruction issued by the trial court adequately informed the jury that it could only convict Helish of conspiracy if it concluded that he was a member of the conspiracy alleged in Count 1 of the indictment. The court instructed the jury:

The defendants are charged in Count 1 with conspiracy to possess with intent to distribute and to distribute marijuana.

In order to establish the offense of conspiracy the government must prove the following elements:

(1) That two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan; that is, to possess with the intent to distribute and to distribute marijuana as charged in the indictment, and

(2) that the defendant knowingly and intentionally became a member of the conspiracy.

A conspiracy may be established even if its purpose was not accomplished.

In your consideration of the conspiracy offense, as alleged in the indictment, you should first determine, from all of the testimony and evidence in the case, whether the conspiracy existed as charged. In determining whether the alleged conspiracy existed you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants. If you find that no conspiracy existed, then you must find the defendants not guilty of Count 1.

If you conclude that a conspiracy did exist as alleged, you should next determine whether or not the defendant knowingly and intentionally became a member of such conspiracy. In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant.

To be a member of the conspiracy the defendant need not join at the beginning or know all the members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt from the defendant's own acts and statements that he

was aware of the common purpose and was a willing participant.

If you find from your consideration of all the evidence that each of the elements has been proved beyond a reasonable doubt as to a defendant, then you should find that defendant guilty of conspiracy as charged in Count 1 of the indictment. If, on the other hand, you find from your consideration of all the evidence that any of the elements has not been proved beyond a reasonable doubt as to a defendant, then you should find that defendant not guilty on Count 1....

The indictment charges a conspiracy among the defendant and others, some of whom are named in the indictment as co-conspirators and some who are not so named.... [Y]ou cannot find the defendant guilty of conspiracy unless you find beyond a reasonable doubt that he participated in a conspiracy as charged with at least one other person....

Each count of the indictment charges each defendant named in that count with having committed a separate offense.

You must give separate consideration both to each count and to each defendant. You must consider each count and the evidence relating to it separate and apart from every other count....

We have recently held similar instructions to be sufficient to inform the jury that, in order to convict the defendant of an alleged conspiracy, it must find that he was a member of that conspiracy and not another. *See United States v. Briscoe*, 896 F.2d 1476, 1513–14 (7th Cir.1990); *Grier*, 866

F.2d at 933. The instruction tendered by Helish does little but reiterate this point to the jury.[7] We see no prejudice to the defendant from a refusal to instruct the jury repeatedly that, to convict, it must find the defendant guilty of the crime charged. We thus conclude that the defendant has also failed to satisfy the third and fourth prongs of *Douglas*. The trial court's instruction adequately addressed Helish's theory of the case, and, consequently, he was not denied a fair trial by the trial court's refusal to give his proposed instruction.

### D. *Prosecutorial Misconduct*

Finally, Helish alleges that he was denied a fair trial by remarks made by the prosecutor during closing argument. "In considering a claim of improper argument by the prosecution, this court follows a two-step analysis. First, we determine whether, considered in isolation, the challenged remark was improper. If so, we reexamine the improper remark in light of the entire record to determine whether the remark deprived the defendant of a fair trial. As part of this second step, we consider whether and to what extent the improper remark was provoked by the defense counsel's argument—the so-called 'invited response' doctrine." *United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.1987). Applying this standard to Helish's claims, we conclude that none of the remarks cited was improper; consequently, none of the

---

7. Helish's proposed instruction reads, in part:
   In this case, the defendants contend that the government's proof fails to show the existence of only one overall conspiracy. Rather, they claim that there were actually several separate and independent conspiracies with various groups of members.

   . . . . .

   Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.
   Where persons join together to further one common unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.

   . . . . .

   [I]f you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in the indictment existed, even though the purposes of both may have been the same and even though there may be some overlap in the membership.
   By the same token, if you find that a particular defendant was a member of another conspiracy, not the one charged in the indictment, then you must acquit the defendant of the conspiracy charge.

remarks deprived the defendant of a fair trial.

Helish first claims that the prosecutor impermissibly expressed his personal opinion of Helish's guilt to the jury. During closing argument, the prosecutor summed up the government's case against Helish by saying:

> So, there is no doubt with regards to Mr. Helish. You can accept his defense or reject his defense, and it is of no concern because it is the Government's case which has shown that Mr. Helish joined the conspiracy and in the months charged in those counts possessed the requisite amount of marijuana, as stated with the intent to distribute it and he is guilty....
>
> .    .    .    .    .
>
> The question is, did we prove it beyond a reasonable doubt, and there is no reasonable doubt in this particular case. Mr. Helish has done what he is charged with. Mr. Auerbach has done what he is charged with. Convict them.

Helish adds that these remarks were particularly egregious because the prosecutor was pointing at Helish as he was speaking.

We decline to adopt the defendant's curious view that it is improper for the prosecutor to argue to the jury that a defendant is guilty. Helish is correct that it is improper for the prosecutor to express his personal opinion about a defendant's guilt, see United States v. Young, 470 U.S. 1, 17, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985), but this prosecutor did not do so. Each comment cited by the defendant was prefaced by a reference to the government's case; the prosecutor's statements were simply a permissible comment upon what the evidence showed and not a statement of his personal opinion regarding the defendant's guilt. See, e.g., United States v. Spivey, 859 F.2d 461, 466 (7th Cir.1988) (prosecutor's characterization of defendants as "con men" constituted reasonable inference based on the evidence, not the prosecutor's personal opinion on the merits of the case); United States ex rel. Clark v. Fike, 538 F.2d 750, 758–59 (7th Cir.1976) (prosecutor's statement that defendant "has committed a dastardly crime, he should be punished" not improper; additional statement that "You know it, I know it and the courtroom knows it" was improper). Moreover, there is no indication that the prosecutor was attempting to influence the jury's evaluation of the evidence by implying that they should defer to an opinion based on his experience, expertise, or insider's knowledge of the case. Cf. Young, 470 U.S. at 18, 105 S.Ct. at 1047; United States v. Wasko, 473 F.2d 1282, 1283 (7th Cir.1973) (prosecutor's statement that "I know he [the defendant] did" held improper and prejudicial on ground that it may have suggested to jurors that prosecutor's opinion was based on evidence not presented).

Helish also contends that the prosecutor improperly bolstered his case by referring to his position as a government official. In response to defense counsel's closing argument that the government was conducting a "witch hunt" and that its witnesses had coordinated and fabricated their testimony,[8] the prosecutor asked the jury:

> Is that what you think your government is doing, getting people together and getting their stories together? If we were going to do that there wouldn't be any

---

8. The defendant's attorney argued:

The truth has been modified, has been fabricated, and has been changed in meetings and people getting together to get their stories straight....

.    .    .    .    .

These guys are turning on each other, yet they are giving each other jobs. They are talking among each other and they want you to believe that what they say is true....

.    .    .    .    .

And you know prior to us becoming a country they used to burn witches.... And everybody knows there is no such things as witches. Everybody knows that, and I suspect most people back then believed it too, yet they got people to say that the other person was a witch and they did it, and certainly not means like the government has done here, but the same principle; put pressure on them to name somebody.

mistakes. But that wasn't done. These people testified from what they knew, and if they couldn't identify somebody, they didn't. And if they didn't remember an exact date they didn't change it.

■■■ Again, Helish correctly cites the law but misapplies it. It is impermissible for the prosecutor to strengthen its case by invoking the prestige of the United States government. *United States v. Eley,* 723 F.2d 1522, 1525 (11th Cir.1984). Here, the prosecutor did not do so. A single reference to the fact that the prosecutors represent the government does not necessarily represent an attempt to improperly sway the jury's evaluation of the evidence. The prosecutor made no attempt to argue to the jury that the conduct alleged by defense counsel was farfetched merely because the defense was accusing officials of the United States Government of misconduct. In fact, the prosecutor implicitly accepted the premise that such conduct *was* possible of government officials; he merely pointed out to the jury that, if the defense's allegations were true, the government did not do a very good job of coaching its witnesses.

Even if the prosecutor intended these remarks to suggest to the jury that government officials would not stoop so low, the defense invited them by charging that the government had engaged in a witch hunt. We have previously held that, "where defense counsel 'struck the first blow' by impugning the integrity of the government, '[t]he Government's response was invited and within the bounds of proper argument.'" *United States v. Peco,* 784 F.2d 798, 809 (7th Cir.1986) (quoting *United States v. West,* 670 F.2d 675, 689 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982)). Helish's claim that the defense comments in closing were directed toward the government's witnesses, rather than the government itself, is arguable; in any event, we have previously noted that this argument raises a "distinction without a difference." *West,* 670 F.2d at 689.

Because we conclude that the prosecutor's comments were not improper, we have no occasion to consider whether they denied the defendant a fair trial.

IV.

Accordingly, we affirm the convictions of appellants Auerbach and Helish.