In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2669

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LEROY GOREE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 778 — **Robert M. Dow, Jr.**, *Judge.*

ARGUED MAY 21, 2014 — DECIDED JUNE 24, 2014

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Leroy Goree ("Goree") was convicted
by a jury of conspiring to knowingly and intentionally possess
with intent to distribute less than 28 grams of crack cocaine in
violation of 21 U.S.C. §§ 841(a)(1) and 846. Goree now appeals
to this court, asserting that the evidence presented at trial was
insufficient to support the jury's verdict. For the reasons that
follow, we affirm Goree's conviction.

## I. BACKGROUND

On April 29, 2008, and May 6, 2008, Goree and Vanessa Woods ("Woods") drove from St. Louis, Missouri, to Chicago, Illinois, in Goree's minivan in order to purchase crack cocaine. On both occasions, when they arrived in Chicago, they followed Christopher Gavin ("Gavin") to the parking lot of Garfield Gyros, a restaurant on the south side of the city. Gavin was a broker who purchased crack cocaine from Isaiah Hicks ("Hicks"), a known large-scale supplier of crack cocaine. Hicks was the target of a Bureau of Alcohol, Tobacco, and Firearms ("ATF") wiretap investigation that lasted from February 2008 to May 2008; Hicks's conversations during this time were recorded, and ATF agents were able to surveil the Garfield Gyros parking lot and witness the drug deals at issue in this case.

### A.  The April 29, 2008, Drug Transaction

On April 29, 2008, Gavin called Hicks and arranged to buy approximately 9 ounces of crack cocaine for $4,900. Hicks then called Kevin Masuca ("Masuca"), his delivery man, and ordered Masuca to deliver four 63-gram bags of crack cocaine to Gavin in the parking lot of Garfield Gyros. Masuca went to the parking lot and met with Gavin in the backseat of Gavin's car. He gave Gavin a black plastic bag full of crack cocaine in exchange for cash, then left the parking lot. After Masuca left, Gavin walked to Goree's minivan and had a brief conversation with Goree and Woods. He handed over the black plastic bag containing the crack cocaine to Woods, then returned to his car and left the parking lot. Goree and Woods left shortly thereafter.

### B. The May 6, 2008, Drug Transaction

On May 6, 2008, Gavin called Hicks and arranged to buy a half kilogram of crack cocaine for $9,700. Hicks again ordered Masuca to deliver the crack cocaine to Gavin in the Garfield Gyros parking lot. Shortly thereafter, Masuca arrived at the parking lot carrying a brown paper bag filled with crack cocaine. Gavin, Goree, and Woods were already parked in the lot at this time. Gavin had arrived in a car driven by David Johnson ("Johnson"), who served as a lookout during the drug deal. Masuca met briefly with Gavin inside the restaurant and then the two entered Johnson's car while Johnson stood outside as a lookout. Masuca handed Gavin the brown paper bag full of the half kilogram of crack cocaine in exchange for payment. Masuca then left the parking lot. Afterwards, Gavin exited Johnson's car carrying the brown paper bag full of crack cocaine and went to Goree's car to speak with Woods. Gavin and Woods exchanged something; Goree then left the minivan and went into the restaurant. A short while later, Goree left the restaurant carrying a pizza box and two brown paper bags. He handed one of the brown paper bags to Woods; the bag appeared to contain money. Goree then got into his minivan. Woods walked over to Johnson's vehicle with the cash-filled brown paper bag and handed it to Gavin. She then returned to the driver's seat of Goree's minivan, and she and Goree left the parking lot.

As Woods drove away, ATF agents attempted to stop the minivan, believing they would find crack cocaine inside. Woods, however, sped away and led the agents on a lengthy high-speed chase through the streets of Chicago. Eventually, Chicago police officers were able to curb the minivan and

Woods and Goree were arrested. No crack cocaine was found on Goree or Woods or inside Goree's vehicle, however. Agents released Goree and Woods to avoid compromising the wiretap investigation of Hicks.

### C. Goree's Statements to Agents

Over a year later, in July 2009, Goree was interviewed by an ATF agent at his home in St. Louis; the agent asked Goree why he had driven to Chicago with Woods on two separate occasions the year before. At first, Goree told the agent that he and Woods went to Chicago in order to look at some properties they planned to purchase. However, after seeing surveillance photos of him, Woods, Gavin, and Masuca in the Garfield Gyros parking lot and hearing that agents had recordings of wiretapped phone calls, Goree admitted that he and Woods had gone to Chicago to purchase crack cocaine. Goree claimed that the crack cocaine was for Woods alone, and that he only agreed to accompany her because she did not know who she was buying crack cocaine from and was afraid she would be robbed. When the agent pressed for details about the drug transactions, Goree admitted that he and Woods purchased "a lot" of crack cocaine at the first deal and "a half kilo of crack" during the second deal. The agent then asked Goree about the May 6, 2008, police chase; Goree admitted that he told Woods to try and lose the police so that they could dispose of the crack cocaine they had purchased. He said that he told Woods to dip in front of a city bus; he then threw the crack cocaine out the window so he and Woods would not be caught with the drugs.

### D.  Goree's Trial

On March 18, 2013, Goree's jury trial commenced. After the government rested its case, Goree moved for a directed verdict, arguing that the government failed to prove that he possessed the requisite intent to distribute, an essential element of the conspiracy charge. The court denied Goree's motion, and on March 21, 2013, the jury found Goree guilty of conspiring to knowingly and intentionally possess with intent to distribute less than 28 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

### E.  Goree's Post-Trial Motion

On May 16, 2013, Goree moved for judgment of acquittal, claiming that the evidence presented at trial was insufficient for a jury to reasonably conclude that he was guilty of conspiracy beyond a reasonable doubt. The court disagreed, finding that the government had presented "ample evidence" for a jury to conclude that Goree had conspired with Woods to purchase a considerable amount of crack cocaine. Goree now appeals to this court, asserting that the evidence presented at trial was insufficient for a jury to find him guilty beyond a reasonable doubt.

## II. DISCUSSION

A defendant challenging the sufficiency of the evidence against him "faces a formidable burden." *United States v. Burrell*, 963 F.2d 976, 987 (7th Cir. 1992). This court reviews a sufficiency of the evidence challenge in the light most favorable to the government and will reverse a defendant's conviction only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United*

*States v. Love*, 706 F.3d 832, 837 (7th Cir. 2013); *United States v. Jenkins*, 419 F.3d 614, 617 (7th Cir. 2005).

To convict a person of a drug distribution conspiracy under 21 U.S.C. § 846, the government must prove that (1) two or more people agreed to commit a crime and (2) the defendant knowingly and willfully participated in the agreement. *Smith v. United States,* 133 S. Ct. 714, 719 (2013); *Love,* 706 F.3d at 837. "[M]ere knowledge of, association with, or presence at a conspiracy" will not suffice. *Burrell,* 963 F.2d at 988 (citing *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir. 1990)). Instead, "the government must provide substantial evidence that a conspiracy existed and that the defendant knowingly agreed to join it." *United States v. Pazos*, 993 F.2d 136, 139 (7th Cir. 1993). "[S]ubstantial evidence is merely evidence of a sufficient quantity and quality to support the jury's verdict." *United States v. Auerbach,* 913 F.2d 407, 414 n.6 (7th Cir. 1990). Circumstantial evidence, standing alone, can suffice to support a conspiracy conviction, *United States v. Carrillo,* 435 F.3d 767, 776 (7th Cir. 2005), as long as "the prosecution presents enough circumstantial evidence to support, beyond reasonable doubt, an *inference* that the defendants agreed among themselves to distribute drugs … . The critical question … is whether the jury may reasonably *infer* a single agreement among the defendants from the evidence of the drug transactions presented by the government." *United States v. Townsend,* 924 F.2d 1385, 1390 (7th Cir. 1991).

Goree admits that he drove with Woods to Chicago in order to buy crack cocaine and to provide security during the drug deals on April 29, 2008, and May 6, 2008. He asserts, however, that these actions are insufficient to support a conspiracy

conviction, since he did not actively participate in the drug deals, and did not stand to gain financially. This court, however, has routinely upheld conspiracy convictions of defendants whose actions were akin to those of Goree in the past. *See, e.g., United States v. Gregory*, 74 F.3d 819, 824 (7th Cir. 1996) (affirming defendant's conspiracy conviction when the drug deals occurred in his apartment and he served as security during the transactions); *United States v. Vega,* 72 F.3d 507, 513 (7th Cir. 1995) (finding the presence of cocaine in one defendant's car as well as evidence that he handled the cocaine was sufficient to sustain his conspiracy conviction); *United States v. Ramirez,* 45 F.3d 1096, 1103–04 (7th Cir. 1995) (upholding a defendant's conspiracy conviction when he provided the car for the buyer to drive and served as a lookout); *Pazos,* 993 F.2d at 137 (finding evidence that the defendant engaged in counter-surveillance during a drug deal was sufficient to support his conspiracy conviction).

In *Burrell,* we rejected the sufficiency of the evidence challenges of four defendants who challenged their conspiracy convictions. 963 F.2d at 991. The four defendants served as bodyguards while two other defendants agreed to buy a large amount of marijuana from an undercover agent. *Id.* at 981. The bodyguard defendants admitted they were present during the buy, but argued that their mere presence at the scene was insufficient to support a conspiracy charge. *Id.* at 987. In reaching our decision to affirm the defendants' conspiracy convictions, we noted that the defendants did "more than merely appear at the scene of a drug deal." *Id.* at 990. They drove for hours to be present at the deal and constantly watched the van during the transaction. *Id.* We concluded that

when the evidence was viewed in the light most favorable to the government, a jury could have inferred that defendants "knew that a drug deal was going down, and agreed to be a part of it." *Id.*

In *United States v. Hunte*, we affirmed a defendant's conspiracy conviction even though she did not direct any part of the drug deal and stood to gain nothing financially. 196 F.3d 687, 691 (7th Cir. 1999). The defendant accompanied her boyfriend on a cross-country trip, the purpose of which was to buy and bring back a load of marijuana. *Id.* at 689. Along the way, the defendant helped roll joints, registered for a hotel room, and closed hotel window blinds when her boyfriend and others were smoking marijuana. *Id.* at 690. When interviewed by police, the defendant initially lied and said that she and her boyfriend were traveling around looking for farm equipment. *Id.* Though the defendant claimed she was not part of the conspiracy because she did not stand to benefit financially from it, we affirmed her conviction, explaining that "[t]he fact that she did not expect to share directly in the proceeds of the crime does not defeat a finding of knowing participation. A criminal without a profit motive is still a criminal as long as all elements of the crime are established." *Id.* at 690–91.

In *United States v. Sasson*, we rejected a defendant's sufficiency of the evidence challenge to his conspiracy conviction, finding that "a reasonable juror could very easily [have] conclude[d] … that [the defendant] was an active participant in the conspiracy." 62 F.3d 874, 887 (7th Cir. 1995). The defendant was present when drugs were stolen from a pharmacy, drove a friend to participate in five separate drug deals, and conducted surveillance at each deal. *Id.* at 878–80. We noted

that while the defendant "did not personally negotiate or conduct the drug transactions," he was "not exactly passing through while a drug deal went down around him." *Id.* at 886–87.

In this case, Goree admitted that he drove with Woods from St. Louis to Chicago on April 29, 2008, and May 6, 2008. Though he initially lied to an ATF agent about the purpose of their trips to Chicago, Goree eventually admitted that he and Woods were going to Chicago to purchase crack cocaine. He acknowledged that he went along to provide security and that he and Woods bought "a lot" of crack cocaine on April 29, 2008, and "a half kilo of crack" on May 6, 2008. Goree also volunteered that when police attempted to pull Woods over after the May 6, 2008, drug deal, he encouraged her to keep driving, and threw the crack cocaine out the window so that police would not recover it.

### III. CONCLUSION

The evidence presented at Goree's trial was more than ample for a jury to have rationally inferred that Goree knowingly and actively participated in the conspiracy to possess crack cocaine with intent to distribute. We therefore AFFIRM the jury's verdict.