**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 29, 2015
Decided May 12, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-3044

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     *Plaintiff-Appellee*, | Appeal from the United States District Court for Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 CR 535-1 |
| MARLON SHANNON,<br>     *Defendant-Appellant*. | Thomas M. Durkin,<br>     *Judge*. |

**O R D E R**

Marlon Shannon was convicted after a jury trial of possessing with the intent to distribute cocaine and conspiring to do the same. The sole issue on appeal is whether the guilty verdicts are supported by sufficient evidence. Because Shannon has not persuaded us that the trial elicited no evidence from which a reasonable jury could find him guilty beyond a reasonable doubt, we affirm.

The FBI, working with the Chicago Police Department, enlisted a confidential source to uncover a cocaine conspiracy involving Shannon and Walter Blackman (also known as "Gangster"). Shannon helped the source—known to Shannon and Blackman as "Al"—purchase cocaine base from Blackman on January 30, 2012. In the weeks

leading up to the sale, Shannon and Al exchanged several phone calls in which, according to FBI Agent Michael Culloton who testified at trial about crack-cocaine trafficking, the two arranged for Blackman to sell Al nine ounces of cocaine. In the first call Al asked Shannon, "Did you uh, get up with uh, with uh, uh, Gangster? My boy tryin' to get uh, 9 piece dinner." Shannon responded, "I'll special order that size." In another call Shannon tells Al that he talked to Blackman, confirmed that Al wanted "the nine piece," and told him it would cost nine dollars. Agent Culloton explained that drug traders refer to drug quantities in codes, and that "a nine-piece for $9" meant that 9 ounces of crack would sell for $9,000.

On the day of the sale, Al wore recording devices (audio and video) and his movements were followed by a surveillance team throughout the day. The FBI also equipped him with $12,000 of buy money to purchase crack. Officers observed Al get into Shannon's car. The two drove to a grocery store, where Shannon made a purchase that he later gave to Blackman. The surveilling officers could not see what Shannon had bought, but afterwards Al asked Shannon why he bought baking soda (a necessary ingredient for turning powder cocaine into crack). Shannon responded that Blackman "needed some baking soda."

Shannon and Al then met Blackman at a residence on the south side of Chicago. Once inside, Shannon inspected and counted a stack of money. Later Al counted out "three, four, five, six, seven," and Blackman later confirmed that Al gave Shannon "700." Shannon then left the residence for a few hours. Meanwhile, Blackman cooked the powder cocaine into a "9 piece" and a "63." According to Agent Culloton, those references meant 9 ounces and 63 grams of crack. (63 grams, he added, is the same as 2 ½ ounces.) And though 9 ounces and 63 grams is more crack than what Al asked Shannon to arrange, Agent Culloton opined that when a dealer agrees in advance to sell a customer a specific amount of drugs, the dealer does not always deliver the exact amount agreed to.

Shannon returned to the residence, picked up Al, and drove him back to their meeting point earlier that morning. Al, no longer in possession of the buy money, then met up with FBI Agents and handed over two baggies of crack cocaine. The Drug Enforcement Administration tested the drugs and confirmed that the large rock contained 244 grams of crack and the small one contained 59 grams, totaling 303 grams.

Based on this investigation, Shannon was charged with participating in a cocaine conspiracy and possessing with the intent to distribute cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846.

During the trial, the government sought to prove conspiracy by offering evidence to show that Shannon worked for Blackman and brokered the cocaine sale between him and Al. Agent Culloton explained to the jury that a broker is a middleman who brings together a customer and seller and typically gets paid by the drug dealer for arranging the transaction. For the substantive charge, the government pursued a theory of aiding and abetting. Shannon's lawyer did not present evidence but argued that the government proved only that Shannon was a "gofer" and "cash counting machine," not a member of a drug conspiracy. The jury returned guilty verdicts on both counts and found Shannon responsible for 28 grams or more, but less than 280 grams, of crack for the conspiracy count and 280 grams or more for the substantive count. The district court denied Shannon's motion for acquittal, *see* FED. R. CRIM. P. 29—in which he had argued that the evidence was insufficient to support the verdict—and sentenced him to the statutory minimum of 120 months' imprisonment, *see* 21 U.S.C. § 841(b).

Shannon appeals, challenging the sufficiency of the evidence for his two convictions. He faces an uphill battle, though, because this court defers greatly to a jury's verdict, and, viewing the evidence in the light most favorable to the government, will reverse a conviction only if no reasonable trier of fact could have agreed with the jury. *See United States v. Sewell*, 780 F.3d 839, 847 (7th Cir. 2015); *United States v. Garcia*, 754 F.3d 460, 470 (7th Cir. 2014).

Shannon first argues that the government did not prove beyond a reasonable doubt that he conspired with Blackman to distribute crack. According to Shannon, the government's case-in-chief does not support a guilty verdict for conspiracy because there was no evidence that he actively negotiated a drug sale price or quantity. And even if the government showed that he worked as a middleman, Shannon contends that the evidence supports an inference that he worked not for Blackman but for Al, who, as a government agent, cannot be a coconspirator.

The trial record contains sufficient evidence to support the conclusion that Shannon conspired with Blackman to distribute cocaine. Contrary to Shannon's assertion, "actively" negotiating sales is not a requirement for finding criminal liability. *See United States v. Sasson*, 62 F.3d 874, 886–87 (7th Cir. 1995) (evidence that defendant performed counter-surveillance at five drug sales sufficient to infer role as

coconspirator even though he did not personally negotiate or conduct drug transactions); *United States v. Burrell,* 963 F.2d 976, 989–90 (7th Cir. 1992) (evidence that defendant drove two hours to site of drug sale, was armed, and served as lookout was sufficient to infer defendant was drug conspirator). It is sufficient that two parties agree to engage in criminal activity. *See United States v. Goree,* 756 F.3d 522, 525–26 (7th Cir. 2014); *United States v. Morales,* 655 F.3d 608, 635 (7th Cir. 2011). Here, the evidence introduced at trial permits the inference that Shannon and Blackman agreed to sell Al cocaine: After Al called Shannon and asked to buy nine ounces of cocaine, Shannon discussed the sale with Blackman and relayed to Al a purchase price; at Blackman's direction Shannon bought an essential ingredient for converting powder cocaine into crack; on the day of the sale Shannon drove Al to *and* from the residence where the transaction took place, thus assuming the risk for Blackman of driving with illegal drugs in the car; and Shannon carefully inspected the money Al provided, ensuring for Blackman that it was the right amount and not counterfeit.

Shannon next contends that the jury's guilty verdict for the substantive charge cannot stand on a theory of aiding and abetting because he acted merely as an intermediary for a sale of 9 ounces of cocaine, and that sale, he says, never came to fruition because the amount transacted was 9 ounces *plus 63 grams* of cocaine.

There is sufficient evidence in the record to support the jury's conclusion that Shannon had aided and abetted the drug sale. To prevail on a theory of aiding and abetting, the government must prove that the defendant "associated himself with the criminal activity and that he voluntarily participated in it," for example, by sharing the principal's criminal intent or affirmatively acting to make the criminal activity succeed. *United States v. Taylor,* 637 F.3d 812, 816 (7th Cir. 2011); *see Rosemond v. United States,* 134 S.Ct. 1240, 1245 (2014). Although the recorded phone calls show that Shannon initially set up a sale for nine ounces of crack, the government offered uncontested testimony that the amount of drugs received during a sale commonly differs from a previously negotiated amount through a broker. That testimony undercuts Shannon's focus on a deal for only nine ounces. Moreover, in addition to the recorded calls setting up the sale, evidence presented at trial also revealed that Shannon drove Al to and from the sale and bought the baking soda for Blackman.

AFFIRMED.