**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Julio P. PAZOS and Amparo Carrion,**
**Defendants–Appellants.**

**Nos. 92–1274, 92–1276.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1993.

Decided May 11, 1993.

Bennett E. Kaplan (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

John A. Meyer, Chicago, IL (argued), for Amparo Carrion.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL for Julio R. Pazos.

Before POSNER, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case requires us to decide whether the government can sustain a drug conspiracy conviction solely on evidence that the defendant engaged in counter-surveillance during a drug transaction. Finding that such evidence alone can be sufficient, and finding the defendants' other challenges meritless, we affirm their convictions.

## I.

The following facts were adduced at trial. On April 26, 1991, Special Agent Sergio Luna, working undercover for the Drug Enforcement Administration, had a prearranged appointment to buy three kilograms of cocaine with the help of confidential informant Manuel Vega. At approximately 11 a.m., Agent Luna and Vega arrived at a Wendy's restaurant parking lot in Chicago. Agent Luna observed defendant Amparo Carrion standing near a red Camaro. Vega got out of Agent Luna's car, walked over to Carrion and briefly spoke with him. Moments later, defendant Julio P. Pazos appeared, and Pazos and Vega joined Agent Luna in his car. After introducing himself to Agent Luna, Pazos informed Luna that he did not have the cocaine with him but would call his supplier. Agent Luna and Pazos haggled over amount and price, and Luna showed Pazos a briefcase containing approximately $100,000. Pazos then left to call his supplier.

During this meeting, Carrion stood near the Camaro and stared toward Agent Luna's car, periodically looking in different directions around the parking lot. Pazos called his supplier from a nearby public phone, spoke briefly to Carrion, and returned to Luna's car. Pazos told Agent Luna that

he was waiting for a call back from his supplier and the two men discussed the possibility of future cocaine deals. Agent Luna asked whether Carrion was Pazos' brother. Pazos replied that Carrion was his brother-in-law and that they hung around together. At this point, Agent Luna told Pazos to call him on his car phone when he heard back from the supplier, and Luna and Vega left the parking lot in Luna's car. Shortly thereafter, Pazos and Carrion also left the parking lot in the Camaro.

At approximately 11:35 a.m., Pazos phoned Agent Luna and informed him that it would be about two hours until the cocaine delivery. Pazos agreed to call Agent Luna once he received the cocaine. Sometime after 1:30 p.m., Pazos and Carrion returned to the Wendy's parking lot in the Camaro. Both men got out and walked toward the public phone.[1] At about 2:00 p.m., Agent Luna received a call from Pazos telling him the cocaine would be delivered in twenty minutes. Pazos promised to call back as soon as the cocaine arrived.

At 2:10 p.m., Pazos, Carrion, Orlando Marin and a fourth man were observed talking in the parking lot. Thereafter, Marin and the other man walked away, and Pazos and Carrion returned to the Camaro. Minutes later, Marin reappeared in a Jetta, picked up Pazos and Carrion, and drove away. Soon after, the Jetta returned to the parking lot with only Pazos and Carrion. The defendants parked the Jetta, walked to its rear and stood next to each other in front of the trunk. Pazos opened the trunk and began shifting items around. Pazos then pulled out a plastic shopping bag and opened it in Carrion's direction. Pazos then put the bag back and closed the trunk. Carrion returned to the Camaro and stood near it while Pazos walked off toward the public phone.

At approximately 2:20 p.m., Pazos called Agent Luna and informed him that the cocaine had arrived. Agent Luna told Pazos he would meet him within ten minutes. Pazos

then returned to the Jetta and began cleaning the car's windows. Soon after, Agent Luna drove into the parking lot. Pazos opened the Jetta's trunk, removed a plastic shopping bag similar to the one he had shown Carrion, walked over to Luna's car and got in. Meanwhile, Carrion stood outside the Camaro.

Inside Luna's car, Pazos opened the shopping bag and removed a rectangular-shaped white plastic package. Agent Luna cut into the package and discovered a white chunky substance under several layers of plastic, tape and mechanic's grease. While Agent Luna was examining the package, Carrion continued to stand by the Camaro, staring at Luna's vehicle and looking around the parking lot.

After Agent Luna examined a second rectangular-shaped package, he activated the prearranged arrest signal. Surveillance agents in the area emerged and arrested both Pazos and Carrion. Carrion was searched near the Camaro and was found to be carrying a fully loaded .38 caliber revolver in his waistband underneath his shirt. A bullet resistant vest was recovered from the Camaro. In total, Pazos' shopping bag contained 2,999 grams of 91% pure cocaine. Later that day, Marin was also arrested with Pazos' home and beeper telephone numbers in his possession.

On May 24, 1991, Julio Pazos and Amparo Carrion were indicted for conspiracy to knowingly and intentionally possess with intent to distribute three kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).[2] In addition, each was charged with using and carrying a firearm during and in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Both defendants pled not guilty on May 29, 1991. On October 8, 1991, Pazos attempted to change his plea to guilty. Although Pazos was willing to plead guilty to all the charges against him, he maintained that Carrion was

---

1. Government agents had the parking lot under surveillance. However, the public phone was located on the far side of a building and none of the agents actually could see whether Pazos or Carrion used the phone. Presumably Pazos used this phone to call Agent Luna since each time

Agent Luna received a call from Pazos, Pazos had recently disappeared around the building.

2. Orlando Marin was also indicted for the conspiracy, but his case is not part of this appeal.

not involved in the conspiracy. As a result, the district court refused to accept Pazos' plea because Pazos had no reason to plead guilty to the firearm charge if Carrion, who had actually carried the firearm, was not a coconspirator. Subsequently, both men went to trial and were convicted on all counts.

On appeal, defendant Carrion argues that the evidence was insufficient to prove he was a member of the conspiracy. Defendant Pazos adopts Carrion's position and further argues that since he was convicted of carrying a firearm solely under *Pinkerton* liability, his conviction for this offense cannot stand if Carrion was not a member of the conspiracy.

## II.

Specifically, Carrion raises two challenges to his convictions. First, he claims that the government's evidence is insufficient to prove that he joined the conspiracy to sell cocaine. Second, he argues even if the government's evidence shows that he engaged in counter-surveillance, engaging in counter-surveillance alone is insufficient to prove membership in a conspiracy. We address Carrion's second claim first.

The crime of conspiracy punishes agreements to commit crimes. *United States v. Brigham,* 977 F.2d 317, 319 (7th Cir.1992). To sustain a conspiracy conviction, the government must provide substantial evidence that a conspiracy existed and that the defendant knowingly agreed to join it. *United States v. Burrell,* 963 F.2d 976, 987–88 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). However, because circumstantial evidence can be the sole support for a conspiracy conviction, the government is not required to present direct evidence that a defendant joined the conspiracy. *United States v. Gutierrez,* 978 F.2d 1463, 1469 (7th Cir.1992). The government's evidence easily proves the existence of a conspiracy to possess with intent to distribute cocaine. In fact, Carrion does not challenge the existence of a conspiracy. Rather, he claims that even if he conducted counter-surveillance during the drug transaction, that fact alone is insufficient to prove his membership in the conspiracy.

Faced directly with the question of whether engaging solely in counter-surveillance at a drug transaction is sufficient to prove membership in a conspiracy to sell drugs, we answer yes. Dicta in *United States v. Mojica,* 984 F.2d 1426, 1435 (7th Cir.1993), may have supposed a contrary view. However, the precise holding in *Mojica* was that the government had presented sufficient evidence—of counter-surveillance activities and other activities—from which the jury could conclude that the defendant was a member of the conspiracy. *Id.* Thus, *Mojica* is not inconsistent with our conclusion that the government may prove membership in a conspiracy by proving that the defendant conducted counter-surveillance.

The reasoning behind our conclusion is simple. "The jury may consider overt acts in furtherance of the conspiracy as circumstantial evidence establishing knowing participation in a conspiracy." *Burrell,* 963 F.2d at 988. Engaging in counter-surveillance during a narcotics transaction—either watching for police or for potential thieves—is an overt act that furthers the goal of a conspiracy to sell drugs. *See United States v. Mares,* 940 F.2d 455, 458 (9th Cir.1991). For example, if the government had produced a tape recorded conversation in which Carrion agreed to perform counter-surveillance for Pazos, Carrion could be convicted solely because of this direct evidence of his participation in counter-surveillance activities. There is no reason why the government cannot prove the same by circumstantial evidence. *See Gutierrez,* 978 F.2d at 1469 (circumstantial evidence alone can prove membership in a conspiracy).

However, just as Carrion cannot obtain protection by claiming to have engaged only in counter-surveillance activities, the government may not convict solely on conclusory testimony that a defendant was conducting "counter-surveillance." This is true because the term counter-surveillance itself is a conclusion that assumes participation in the conspiracy. Hence, the government's evidence must describe the defendant's behavior which the government claims is consistent with counter-surveillance activity.

■] Whether a defendant's behavior constitutes counter-surveillance or simply loitering is a question of fact for the jury to decide. If the jury concludes that the defendant's behavior was counter-surveillance, it is permissible for it to conclude that the defendant was a willing member of the conspiracy. However, even if the jury concludes that the defendant was not engaging in counter-surveillance, it may still convict the defendant as long as there is other evidence from which membership reasonably can be inferred.

Both of the foregoing results are possible because the correct test is whether the total evidence supports an inference that the defendant joined the conspiracy—not whether there is sufficient evidence that the defendant was a counter-surveillant. However, we conclude that counter-surveillance activity may provide the total support for a conspiracy conviction because we cannot conceive of a case in which there would be sufficient evidence of counter-surveillance activity but not sufficient total evidence from which to infer membership in a conspiracy.

■■■ We now turn to Carrion's claim that the evidence does not support the jury's conclusion that he was a willing member of a conspiracy to sell drugs. A defendant challenging the sufficiency of the evidence against him has a heavy burden. *Burrell,* 963 F.2d at 987. We will not overturn a conviction if, when viewing the evidence in the light most favorable to the government, we can conclude that a reasonable juror could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Carrion correctly points out that mere presence at the scene of a drug deal is insufficient to establish membership in a conspiracy, *United States v. Durrive,* 902 F.2d 1221, 1225 (7th Cir.1990). In Carrion's view, the sole inference that can be drawn from

the government's evidence is that he stood around a parking lot waiting for his brother-in-law while a lengthy drug transaction occurred.

In response, the government notes that while presence alone is not enough to convict, "[p]resence or a single act will suffice ... if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy." *United States v. Binkley,* 903 F.2d 1130, 1134 (7th Cir. 1990). In the government's view, the evidence it presented gave rise to an inference that Carrion had joined a conspiracy to sell cocaine and was furthering the conspiracy's goal by protecting the cocaine and conducting counter-surveillance during the transaction.

After reviewing the record in the light most favorable to the government, we believe that there was sufficient evidence from which the jury reasonably could infer that Carrion knowingly joined the conspiracy. Carrion, armed with a loaded weapon, arrived with Pazos at the location of a prearranged drug transaction. He made the initial contact with the government informant, and remained in the parking lot during the deal's negotiations, visually surveying the area generally and closely scrutinizing Agent Luna's vehicle. In addition, Carrion was present when the cocaine was delivered by Marin, was shown the bag containing the cocaine, and guarded the Jetta during Pazos' absence.[3] Finally, Carrion was present when Pazos notified Agent Luna of the delivery,[4] and when Pazos delivered the cocaine to Luna.

It was permissible for the jury to infer from this circumstantial evidence that Carrion joined the conspiracy and furthered it by his activities. *See Burrell,* 963 F.2d at 990. Moreover, the jury was free to reject Car-

---

**3.** Carrion objects to the characterization that he was left alone to guard the Jetta and its cocaine. According to the defendant, he was not alone with the car for very long and he was not standing very close to it, thus such a characterization is erroneous. We will not reweigh evidence and can only conclude that the facts were consistent with the conclusion that Carrion was guarding the Jetta because he was a trusted member of the conspiracy. *Brigham,* 977 F.2d at 319 ("Appellate judges do not serve as additional jurors").

**4.** Although there was no eyewitness testimony that Carrion was with Pazos when he called Luna about the time of the cocaine delivery, one government surveillance agent testified that he watched both men walk toward the pay phone until his vision was obscured by a building. At the very least, this testimony allows the jury to infer the call was made in Carrion's presence.

rion's contention that he was simply looking around, passing time while waiting for his brother-in-law. "Ultimately, the trier of fact must be free to choose among various reasonable constructions of the evidence." *Id.* at 988. We have upheld convictions against sufficiency of the evidence challenges in factually similar cases. *See Brigham,* 977 F.2d at 319; *United States v. Rodriquez,* 975 F.2d 404, 412 (7th Cir.1992); *Burrell,* 963 F.2d at 990.

Despite our holdings in the foregoing cases, Carrion argues that *United States v. Penagos,* 823 F.2d 346 (9th Cir.1987), precludes us from finding that sufficient evidence supports his conviction. We disagree. In *Penagos,* the court held that the government had not presented sufficient evidence that would permit a reasonable juror to conclude either that the defendant had acted as a lookout or that he had joined the conspiracy. 823 F.2d at 349–50. The court relied on the following facts in reaching its conclusion: the defendant was present at only one of three meetings on the day of the transaction; the defendant's "counter-surveillance" activities did not occur during times or places when the risk was greatest; the government offered no evidence of what the defendant was looking at when he was looking up and down the street; and, finally, the defendant was not present when the cocaine was actually delivered. *Id.*

In contrast to the defendant in *Penagos,* Carrion was present at every drug transaction-related meeting on the day of the sale and was present when the cocaine was finally delivered by Marin. Carrion's lookout activities occurred when the risk was greatest— during delivery of the cocaine—and government agents testified that he was surveying the parking lot and paying specific attention to Agent Luna's car. These factual differences distinguish the instant case from *Penagos.*

Because sufficient evidence supports the jury's verdict, we affirm Carrion's conspiracy conviction. The only attack Carrion aims at his weapons conviction is that it cannot stand if his conspiracy conviction is reversed. Having concluded that Carrion's conspiracy conviction stands, we also affirm his § 924(c) conviction.

### III.

Defendant Pazos challenges only his conviction for using or carrying a firearm during and in relation to the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Because Carrion was the defendant who actually carried the gun during the drug transaction, Pazos' § 924(c) conviction rests solely on the rule of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). *Pinkerton* permits coconspirators to be held liable for the foreseeable overt acts of other conspirators done in furtherance of the conspiracy. *Gutierrez,* 978 F.2d at 1467–68. A conspirator in a drug conspiracy can be held liable for a coconspirator's § 924(c) violation because it is reasonably foreseeable that a firearm may be carried during a drug transaction. *Id.* at 1468; *United States v. Allen,* 930 F.2d 1270, 1275 (7th Cir.1991); *United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989).

Pazos does not challenge the application of *Pinkerton* liability in his case. Instead, Pazos argues that there was insufficient evidence to convict Carrion of conspiracy, and if Carrion was not a conspirator, Pazos cannot be vicariously liable for Carrion's § 924(c) offense. Having concluded that sufficient evidence supports Carrion's conspiracy conviction, Pazos' argument must fail.

### IV.

Based on the foregoing, the convictions of Julio P. Pazos and Amparo Carrion are AFFIRMED.