**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose SANCHEZ–GALVEZ, also known as El–Gallo, Lozaro Rosario, and Juan Colon–Sanchez, Defendants–Appellants.**

**Nos. 93–1665, 93–1686 and 93–2325.**

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1994.

Decided Aug. 29, 1994.

Barry R. Elden, Asst. U.S. Atty., Christopher Cook (argued), Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

David W. Gleicher, Chicago, IL, for Jose Sanchez–Galvez.

Nathan Diamond–Falk (argued), Chicago, IL, for Lozaro Rosario.

Anita Rivkin–Carothers (argued), Chicago, IL, for Juan Colon–Sanchez.

Before BAUER, and CUDAHY, Circuit Judges, and GRANT, District Judge.*

BAUER, Circuit Judge.

Jose Sanchez–Galvez ("Sanchez") and Lozaro Rosario were each tried and convicted for conspiracy to possess cocaine with the intent to distribute and for attempted possession of two kilograms of cocaine. In connection with the same transaction, Juan Colon–Sanchez ("Colon") pleaded guilty to one count of conspiracy to possess cocaine with the intent to distribute. Sanchez and Rosario appeal their convictions and Colon challenges his sentence. We affirm their convictions and sentences in all respects.

## I.

In April of 1992, Drug Enforcement Agency ("DEA") Agent Kirk Meyer, working undercover, made several attempts to arrange a cocaine transaction through a self-proclaimed narcotics broker named Delfino Zamora. Zamora was finally able to organize a deal in which Meyer would sell between one and five kilograms of cocaine to the defendant Sanchez at a price of $27,000 per kilogram. Meyer was to receive $20,000 per kilogram, with the difference representing Zamora's commission. At 2 p.m. on April 29, after Zamora had repeatedly postponed the transaction, Meyer received a message to call Zamora at the defendant Rosario's home. When Meyer called back, Zamora, who had arrived at Rosario's house with Sanchez, told Meyer that the buyers were getting the money together and that they would meet Meyer at a restaurant on Chicago's south side. Soon after this conversation, Colon arrived at Rosario's house. The group then departed for the meeting place with Colon and Rosario in one car and Sanchez, Zamora, and Sanchez's young son in another car.

After parking their cars at the restaurant parking lot, the four men met briefly and decided they would purchase two kilograms of cocaine. While Zamora and Colon approached Meyer's car in a parking lot across the street, Rosario and Sanchez stayed near the restaurant where their car was parked. Rosario and Sanchez never entered the restaurant and were constantly watching Meyer's car. Meanwhile, Zamora and Colon exchanged greetings with Meyer and a second undercover agent, Louis Dominguez, Jr. The four men went back to Meyer's car. After Colon asked for two kilograms of cocaine, he and Zamora were arrested. Upon being taken into custody, Colon surrendered to the police a shopping bag in his possession which contained over $57,000 dollars in cash.

---

* The Honorable Robert A. Grant, United States District Judge for the Northern District of Indiana, is sitting by designation.

Rosario and Sanchez were apprehended by surveillance officers on the scene.

Zamora was given immunity in exchange for his testimony at trial. Colon, Rosario, and Sanchez were each indicted for conspiracy to possess cocaine with the intent to distribute, and attempt to possess approximately two kilograms of cocaine. Colon pleaded guilty and appeals only his sentence. Rosario and Sanchez were convicted and now appeal their convictions.

## II.

### A. Expert Testimony

 Rosario and Sanchez make several challenges to the admission of expert testimony by DEA agent, Michael Hillebrand. Hillebrand, an agent with the DEA for twenty-one years was allowed to testify as an expert in the field of narcotics transactions. He testified that the presence of several persons, in addition to the buyer and seller, at a narcotics transaction is common and that often those persons serve specific roles. For example, they may provide transportation or protection services, or they might be used to conduct counter-surveillance. Hillebrand also stated that the presence of children at drug deals is increasing in frequency. Finally, Hillebrand testified that parking lots are common venues for narcotics transactions.

Rosario and Sanchez object to the admission of this testimony for several reasons. First, they argue that it is not properly characterized as expert testimony because it is speculative and does not aid the jury in any way. Second, they claim that even if the testimony were otherwise admissible, it should have been excluded in this case because the government did not provide the defense with notice of their intent to call Hillebrand. Finally, Rosario and Sanchez contend that the testimony represents an instance of reversible error because the court suppressed evidence about Hillebrand's record which would have been valuable for impeachment purposes.

We have held on prior occasion that because the clandestine nature of narcotics trafficking is likely to be outside the knowledge of the average layman, law enforcement officers may testify as experts in order to assist the jury in understanding these transactions. *United States v. De Soto*, 885 F.2d 354, 359 (7th Cir.1989). This type of testimony remains subject to the requirements of Rule 702 of the Federal Rules of Evidence: (1) that the witness be qualified, and (2) that the witness does not speak to matters which are within the knowledge and experience of the jury because such testimony is not helpful. *Id.* at 361. Rosario and Sanchez contend that the testimony failed the second prong of this test.

 Challenges to the admissibility of expert testimony are reviewed for an abuse of discretion. *Id.* at 359. We find no such abuse here. In *De Soto*, we affirmed the admissibility of testimony by a DEA agent who described the use of counter-surveillance in drug transactions. The defendants there argued that their actions, which consisted of repeatedly driving around the site of the deal, were perfectly capable of interpretation by the jury and that use of an expert was not helpful to the jury. Rosario and Sanchez make the same argument here.

Any set of facts is capable of some interpretation. Yet, if to the person charged with interpreting them, those facts are somehow intricate in their nature or detail, the inferences drawn may be simply guesswork. Expert testimony provides the trier of fact with an opinion about the inferences which may be drawn from a complex set of facts. *United States v. Stevenson*, 6 F.3d 1262, 1266 (7th Cir.1993). In this case, Agent Hillebrand's testimony was designed to educate the jurors about drug transactions in general. As a result of his testimony, the jury was able to apply to the evidence alternative theories of which they ordinarily would not have been aware. His testimony in no way precluded the jury from arriving at an innocent explanation for Rosario and Sanchez's activities rather than the more culpable conclusion which they drew instead.

 Rosario and Sanchez next argue that because the government did not provide notice that Agent Hillebrand would be offering expert testimony, the evidence should have been excluded under Rule 16. Though they

concede that at the time of the trial, Rule 16 required only disclosure of "any results or reports of physical or mental examinations, and of scientific tests or experiments," Rosario and Sanchez contend that the court should have gone beyond the strict language of the rule and looked at the unfairness which resulted from the failure to notify.

This argument is somewhat disingenuous. Rosario and Sanchez acknowledged before the district court that Rule 16 did not require the disclosure which they were seeking. They requested and were granted time to depose Hillebrand and to obtain a rebuttal witness. The record does not reveal any reason to exclude the evidence based on Rule 16 and to the extent that any unfairness resulted, it was remedied by permitting the defense to depose Agent Hillebrand before cross-examination.

■ Finally, Rosario and Sanchez contend that the government, in violation of the Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), suppressed evidence about Agent Hillebrand favorable to the defense. In the spring of 1972, Hillebrand was involved in several drug-related arrests in Collinsville, Illinois, which received substantial publicity locally and nationally. Questions and complaints about the legality of the arrests inspired federal authorities to seek indictment of the officers involved. At first, prosecutors did not succeed, but they tried and tried again and the third grand jury finally returned an indictment against the twelve officers. Among the charges was an allegation that the officers had drawn up fictitious arrest reports in order to justify what were illegal arrests. The twelve officers, all represented by privately retained counsel, were all acquitted on every criminal count and also prevailed in the civil suits filed against them. The federal agents then filed successful counter-suits against the Justice Department.

During Agent Hillebrand's direct examination, the prosecution became aware of this incident and immediately brought it to the attention of the court and the defense attorneys. The government made a motion to exclude evidence of any mention of the "Collinsville raids." Rosario's attorney opposed the motion, arguing that the charge of false arrest was probative of truthfulness, and therefore, constituted legitimate impeachment material. Despite Rosario's claim, the court granted the government's motion, holding that the twenty-year lapse in time combined with the overwhelming evidence that the charges were unfounded and baseless, rendered the probative value of this evidence remote.

■ The *Brady* doctrine holds that the prosecution is constitutionally obligated to disclose to the defense any evidence within its possession that is material to guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. *Giglio* extends *Brady* to include information useful for impeachment purposes where impeachment would be material to guilt or punishment. *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766. To prevail on a *Brady* claim, the defense must show that the evidence (1) was favorable to them, (2) was suppressed by the prosecution, and (3) was material to the case. *United States v. Dimas*, 3 F.3d 1015, 1017 (7th Cir.1993).

■ Rosario and Sanchez fail to demonstrate that this evidence either was suppressed or was material to the case. The prosecuting attorneys stated that they revealed this information to the court as soon as they learned of it. Neither the defendants nor Judge Plunkett found any reason to dispute this claim. Moreover, since it was excluded from the trial, it is difficult to characterize the evidence as material. Evidence is material if there is a reasonable probability that had it been disclosed, the result of the proceeding would have been different. *United States v. Roberts*, 22 F.3d 744, 753 (7th Cir.1994). Clearly, the result of the proceeding would not have differed since the evidence was eventually excluded.[1]

---

1. The defendants do not challenge, as an abuse of discretion, the trial court's exclusion of the evidence under Rule 403 of the Federal Rules of

Evidence. Such a challenge would, in any case, be unavailing. *See United States v. Washington*, 504 F.2d 346, 349 (8th Cir.1974) (finding no

### B. Sufficiency of the Evidence

 Rosario, individually, challenges the sufficiency of the evidence underlying his conspiracy conviction. A conspiracy is an agreement between two or more persons to commit a criminal act. *United States v. Roberts*, 22 F.3d 744 (7th Cir.1994). To prove a conspiracy, the government must provide substantial evidence that an agreement was in existence and that the defendants knowingly joined the agreement. *United States v. Burrell*, 963 F.2d 976, 987–88 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). Rosario argues that at most, the evidence suggests that he was associated with the conspirators involved and that he was present at the scene. Nothing, in his view, supports the conclusion that he was a participant in the conspiracy.

 While Rosario is correct in stating that mere presence at the scene of the deal is insufficient to convict, *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir.1990), if the defendant's presence can be interpreted to somehow further the conspiracy, it is enough. *United States v. Moya–Gomez*, 860 F.2d 706, 759 (7th Cir.1988), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). In *United States v. Pazos*, 993 F.2d 136, 139 (7th Cir.1993), for instance, we were called upon to address the significance of evidence that a person's sole function in a narcotics transaction was to perform counter-surveillance. We reasoned that since any overt act in furtherance of a conspiracy may be considered evidence of participation in the conspiracy and since counter-surveillance is an overt act which furthers the aims of a drug trafficking conspiracy, evidence of counter-surveillance alone should be sufficient to support a conspiracy conviction. *Id.*

The question of whether a defendant was performing counter-surveillance or was merely loitering is a question for the trier of fact. *Id.* at 140. Here, it was perfectly reasonable for the jury to conclude from the fact that the defendants gathered at Rosario's north side house before making the deal and the fact that Rosario was present for the brief discussion at the restaurant where the four men decided to purchase two kilograms of cocaine, that Rosario's function in standing by the restaurant and periodically observing the progress of the deal was to perform counter-surveillance in aid of the conspiracy. Ascribing sinister motives to Rosario's presence was an inference rationally derived from the evidence.

### C. Improper Closing Remarks

 In its closing argument, the government attorney, after going through the evidence in the record, asked the following rhetorical question, "Now, I ask you, ladies and gentleman, is there anything in that story with respect to either one of these people, is there any reasonable, is there any rational explanation in that story which is consistent with innocence?" Defense counsel objected, arguing that this statement implied that the defendants were obligated to come forward with evidence on their own behalf. Without sustaining the objection, the court clarified for the jury as it did again in its instructions, that the burden of proof was squarely on the government to prove what they had charged beyond a reasonable doubt. Rosario and Sanchez nevertheless contend that the prosecutor's statement shifted to them the burden of proof in violation of the Supreme Court's decision in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and they ask us to grant a new trial on this basis.

 Prosecutorial remarks can provide a basis for a new trial only if the remarks were improper and so infected the entire trial with unfairness so as to render the conviction a denial of due process. *United States v. Goodapple*, 958 F.2d 1402, 1409 (7th Cir.1992). Comments as to the credibility of witnesses and reasonableness of inferences are permissible so long as they are in fact based on the evidence and not on the attorney's personal opinion. *Id.* at 1410. The government may not, however, imply that a nontestifying defendant's silence is evidence of guilt. In *Griffin*, the Supreme

---

abuse of discretion in trial court's decision forbidding impeachment of government officer by reference to his involvement in the "Collinsville raids"); *United States v. Qualls*, 500 F.2d 1238, 1240 (8th Cir.1974) (same); *United States v. Kirk*, 496 F.2d 947, 950 (8th Cir.1974) (same).

Court recognized that allowing the prosecution to comment on a defendant's decision not to testify impermissibly inhibits the exercise of that privilege by making its exercise costly. *Griffin,* 380 U.S. at 615, 85 S.Ct. at 1233–34.

Under these criteria, we find that the challenged remarks fall clearly within the range of permissible argument. Nothing in the prosecutor's statement can be construed as an attempt to use the defendants' silence as evidence against them. Counsel's remarks represent an effort to promote one version of inferences as more reasonable than another. "Arguing inferences is standard business among lawyers which *Griffin* does not forbid." *United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). As long as these inferences find support in the record, and in this case they do, such argument is completely proper.

*D. Sentencing*

■ Juan Colon–Sanchez pleaded guilty to one count of conspiracy to possess cocaine with the intent to distribute. The government then filed an information declaring its intent to seek an enhancement of Colon's sentence based on a prior drug conviction. The existence of a prior narcotics offense increases the sentence for a conviction under 21 U.S.C. § 841(b)(1)(B) from five years to ten years.

Alleging that his prior drug conviction was secured due to constitutionally defective representation, Colon filed a motion to preclude the enhancement. A hearing followed at which the following facts were established.

In 1987, the police executed a search warrant on Colon's home. Colon was not present at the time but his girlfriend, Luz Flores was. The officers seized from Colon's kitchen three plastic bags all containing marijuana. Colon returned home during the course of the search and was arrested. At trial, the police officers testified that, at his house, Colon had admitted the marijuana was his but stated that his girlfriend knew nothing about it. Colon's defense was that he made no such admission and had no knowledge of the marijuana's presence. His trial strategy

was to emphasize the absence of any connection between him and the drugs. Colon was convicted and sentenced to a term of probation.

Colon now contends that the police claimed to have found the marijuana in the basement of his house which would be impossible because the basement was not accessible from the inside. Colon alleges to have informed his trial attorney, James McCarron, of this fact and of the fact that Flores would corroborate this. McCarron's failure to pursue this line of inquiry, according to Colon, constitutes unconstitutionally inadequate representation.

Testifying at the sentencing hearing, McCarron presented a different version of the events. He denied that Colon ever affirmatively stated that the marijuana was found in the basement, only that Colon brought the issue up hypothetically, asking McCarron, "What if it was found in the basement?" McCarron replied, "[I]t would make a difference, possibl[y], a significant difference in the outcome of the case, but I must warn you, if the Judge finds that our witnesses or you are lying there may be a further punishment involved." McCarron testified that the possibility of Flores testifying in support of "the basement defense" was also brought up hypothetically and that McCarron left it to Colon as to whether she would come in and meet with McCarron. In response to questioning from the court, McCarron also defended his trial strategy. He stated that in his experience he had found it much more difficult to gain an acquittal if his defense required the court to find that a police officer had lied. Consequently, he determined that in Colon's case, it was wiser to focus on the lack of evidence connecting Colon to the drugs than to accuse the police officers of manufacturing the arrest.

The sentencing court found McCarron's testimony to be credible and held that his actions were not unreasonable. Even had McCarron acted as Colon suggests he should, the outcome would then hinge on a credibility determination between a police officer and a biased witness, Flores, and according to the court, this did not create a reasonable proba-

bility that the outcome would have been different.

We agree with the district court's determination. To show that representation is constitutionally ineffective, a defendant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) but for these unreasonable errors, there is a reasonable probability that the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Colon fails to meet either of these standards. The manner in which Colon proposed his "basement defense" may have suggested perjury and McCarron's decision to steer clear of it was, therefore, a wise and defensible one. Moreover, as the district court observed, presentation of this defense would not necessarily have undermined the state's case at all. As it was, the court was faced with making a credibility determination between the police and Colon. It is not clear how adding the testimony of his girlfriend and eventual wife, a biased witness, would have affected this determination. Colon does not persuade us that there is a reasonable probability the outcome would have been different.

### III.

This appeal presents us with no semblance of reversible error. The convictions of Jose Sanchez–Galvez and Lozaro Rosario and the sentence of Juan Colon–Sanchez are, therefore,

AFFIRMED.