65 F.3d 170
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd LOYD, also known as L. Morris, Defendant-Appellant.
 No. 94-1722.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1995.
Decided Sept. 5, 1995.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Floyd Loyd, who pleaded guilty to one count of possession with intent to distribute cocaine, 21 U.S.C. Sec. 841(a)(1), seeks to reverse his conviction on direct appeal on the grounds that his counsel provided ineffective assistance in violation of the Sixth Amendment. In moving to suppress evidence allegedly tainted by an unconstitutional search and seizure, Loyd's counsel relied upon police statements to provide the factual basis. Loyd claims that his attorneys[1] did not bother to obtain his version until it was too late and that because the allegedly tainted evidence was not suppressed, he pleaded guilty. We affirm.
 
 
 2
 The following summary of the police's version of events derives from an affidavit supplied by Officer Pam Triner, which also incorporates information from her fellow officers. On December 15, 1992, an agent with the Drug Enforcement Administration ("DEA") at Santa Ana, California, informed the DEA's Transportation Group at O'Hare International Airport that Loyd was flying to Chicago under the name "L. Morris." Just after midnight on December 16, 1992, Loyd was observed arriving at O'Hare with a carry-on bag; he looked around the disembarkment area, made his way to the baggage claim area and claimed two suitcases. Officers Jamie Benvenuti and Tom Granias approached Loyd outside the baggage claim area and asked to talk with him, while Officer Triner looked on from a distance. Loyd consented to speak with them. Officer Benvenuti took an active role in talking to Loyd thereafter. The officers examined Loyd's one-way ticket, and he told them that he was in Chicago for two days to visit his aunt, although he did not know where she lived. He would not let them search his suitcases, but he did consent to a search of his carry-on. This search produced a box of medication bearing the name "Floyd Loyd." He explained his use of an alias by stating that he had problems with his driver's license. After Loyd again declined to permit a search of the suitcases, Officer Benvenuti informed him that he was free to leave, but that the suitcases would be detained for a canine sniff test. After he was given a receipt for the luggage, Loyd left. The subsequent canine sniff test was positive. Based on this information, the officers obtained a warrant, searched the bags and found 23,912 grams of 90% pure cocaine.
 
 
 3
 The district court denied Loyd's motion to suppress, which relied upon the police's version, in a minute order on November 4, 1993. It subsequently filed an opinion and order on November 9, 1993, to further explain the grounds for its denial. The court found that this encounter was a consensual discussion that ripened into an investigative seizure supported by a reasonable articulable suspicion and that the officers had the probable cause necessary to obtain the warrant. Cf. United States v. Withers, 972 F.2d 837, 842-43 (7th Cir.1992), cert. denied, 498 U.S. 1051 (1991); United States v. Johnson, 910 F.2d 1506, 1509-10 (7th Cir.1990); United States v. Sterling, 909 F.2d 1078, 1082-84 (7th Cir.1990).
 
 
 4
 On November 16, 1993, Loyd filed a motion to reconsider the motion to suppress evidence in which he requested the court to consider new evidence. He claimed that in light of the government's recent disclosure of information concerning prior allegations of misconduct by Officer Granias, which were unrelated to Loyd's case, the court should reassess the information provided by the police. Loyd submitted his own affidavit, which described a radically different commencement of the encounter, although many of the later events roughly paralleled the police version. According to Loyd's affidavit, when the officers approached him, the male officer (Officer Granias) touched his elbow and informed him that they were searching for drugs. Then, for the next five minutes, they allegedly refused to answer Loyd's questions as to why he had been singled out, and when he attempted leave, Officer Granias touched his arm and asked him if he wished to be arrested. Thereafter, according to the affidavit, Officer Granias, not Officer Benvenuti, asked to see his ticket and so forth. On appeal, Loyd contends that this version of the events demonstrates that the officers engaged in an investigative stop without a reasonable articulable suspicion.
 
 
 5
 At a hearing on November 16, the court denied the motion to reconsider, at which point Loyd decided to enter a "blind plea," i.e. one without any plea agreement. The court conducted a plea colloquy at this hearing. Due to a dispute over whether the government had promised not to oppose Loyd's motion for a downward departure, at the sentencing hearing on March 25, 1994, the court conducted a second plea colloquy to ensure that Loyd had not been induced to plead guilty due to a miscommunication between the parties. In both colloquies, Loyd admitted to the factual basis introduced by the government. In addition, although Loyd had stated at the first plea colloquy that he had spoken with his attorneys approximately a dozen times, he indicated during the second colloquy that he had consulted with his attorneys possibly as few as six times. The court decided to grant Loyd a downward adjustment for acceptance of responsibility despite his submission of the contradictory affidavit. The court expressly chose to attribute the "inaccuracies" in Loyd's affidavit to the excessive zeal of his attorney, and not to Loyd himself.
 
 
 6
 Ineffective assistance of counsel claims may be raised for the first time on appeal under limited circumstances. See United States v. Boyles, 57 F.3d 535, 550 (7th Cir.1995). "As we have repeatedly held on direct appeal from guilty pleas, we generally do not consider claims of ineffective assistance of counsel.... This is because there is usually an insufficient record on direct appeal from which to review an ineffective assistance of counsel claim." United States v. Phillips, 37 F.3d 1210, 1216 (7th Cir.1994) (citations omitted). Although we may decline to review an ineffective assistance of counsel claim on direct appeal without prejudice to the defendant's opportunity to raise it in collateral proceedings, Phillips, 37 F.3d at 1216 & n. 5, a defendant who tenaciously insists upon review of an ineffective assistance claim on direct appeal may, to their dismay, receive that review. "[W]e do not ordinarily forbid an appellant to present an argument for reversal merely because the probability that the argument will be accepted is low. We are not so paternalistic." Guinan v. United States, 6 F.3d 468, 473 (7th Cir.1993); see United States v. Trevino, 60 F.3d 333, 338 (7th Cir.1995). Both parties in this case have asked us to resolve the issue, the question has been briefed and argued, and the entire trial record is before us. Boyles, 57 F.3d at 550. We therefore proceed to the merits of this claim.
 
 
 7
 To succeed in his claim that his counsel provided ineffective assistance in violation of his Sixth Amendment right to counsel, Loyd must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), and applied specifically to the guilty plea context in Hill v. Lockhart, 474 U.S. 52, 58-61 (1985). First, he must show that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Raising his ineffective assistance of counsel claim for the first time on direct appeal places Loyd at a substantial disadvantage in meeting Strickland 's performance prong because the scope of our review is limited to the trial record. " 'When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight.' " United States v. Penass, 997 F.2d 1227, 1229 (7th Cir.1993) (citation omitted), cert. denied, 114 S.Ct. 458 (1993). Second, Strickland requires the defendant to demonstrate prejudice. Id. at 694. In the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see id (saying that for claim of failure to investigate, test would depend on whether omitted evidence would affect outcome of the trial, such that attorney would have changed his recommendation to his client concerning plea). The record in this case is not sufficient to determine whether counsel's performance fell below an objective standard of reasonableness. Therefore, we need not address the prejudice prong.
 
 
 8
 Loyd claims that his attorneys blindly relied on the police information "without bothering to elicit Mr. Loyd's version of what happened from him." (Appellant's Br. at 10.) Although it appears clear that counsel relied upon the police information, the record does not show that Loyd's counsel completely failed to question him about his version of the events. In explaining to the district court why Loyd's affidavit had not been presented with the motion to suppress, Loyd's counsel indicated that they had formed their position on the suppression issue after discussing it with him and that, in retrospect, "there was a problem in terms of ... asking the right questions of the defendant...." (Tr. IV at 6.) Loyd also points to the limited number of contacts between himself and his attorneys. However, the record does not indicate how many of their discussions involved the suppression issue or how long each discussion concerning that topic lasted. There is no set minimum amount of time required that an attorney must consult with his client in order to render effective assistance. United States v. Goad, 44 F.3d 580, 591 n. 18 (7th Cir.1995), petition for cert. filed, (Apr. 28, 1995) (No. 94-9066-CFY).
 
 
 9
 Loyd essentially asks this court to speculate as to the content of these discussions. Were they cursory or thorough? Did counsel's questions reveal any, some or all of the facts in Loyd's affidavit? Did counsel inadvertently overlook differences between Loyd's version and the police's version or consciously decide that they were not worth pursuing--and if so, was the conscious choice to not inquire further into such differences unreasonable?[2] Does counsel's failure to ask the "right questions" imply that Loyd's responses misled counsel until Officer Granias' potential susceptibility to impeachment caused them to return with a different perspective? Cf. Strickland, 466 U.S. at 691 (saying that failure to pursue investigations may not be challenged as unreasonable when defendant has given counsel reason to believe that pursuing line of inquiry would be fruitless or even harmful). Our review is limited to the record, and the evidence in the record is not sufficient to meet Loyd's burden of showing that his counsel's investigation fell below an objective standard of reasonableness.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Loyd was represented by two attorneys. Milton C. Grimes did not make a formal appearance, although he filed an affidavit in which he indicated that he would be lead trial counsel. See Stoia v. United States, 22 F.3d 766, 769 (7th Cir.1994). The other attorney, Bryant K. Calloway, who was an associate in the law offices of Grimes, also represented Loyd on appeal and abandoned him. This court therefore discharged Calloway as appellate counsel and ordered that his name be stricken from the roll of attorneys entitled to practice before this court and that he be reported to the California State Bar disciplinary authorities
 
 
 [2]
 See United States v. Weaver, 882 F.2d 1128, 1139 (7th Cir.1989) (pointing out that finding counsel's conscious decision not to call witness to constitute ineffective assistance would be an exception, not the rule), cert. denied, 493 U.S. 968 (1989). Compare United States v. Sanchez-Galvez, 33 F.3d 829, 833 (7th Cir.1994) (holding that counsel could reasonable choose to focus on lack of evidence instead of pursuing line of inquiry in order to prove that officer lied and had manufactured arrest), with Williams v. Washington, 59 F.3d 673, 681 (7th Cir.1995) (rejecting defense counsel's attempt to excuse lack of investigation on grounds that case was credibility contest)